IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                               Criminal No. 16-1098 WJ

BRANDON MAESTAS,

    Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS NUMBER 1 (DOC. 30)
and
DENYING DEFENDANT'S MOTION TO SUPPRESS NUMBER 2 (DOC. 26)**[1]

THIS MATTER came before the Court following a hearing on the following motions:

- Defendant's Motion to Suppress Number 1, filed September 1, 2016 (**Doc. 30**); and
- Defendant's Motion to Suppress Number 2, filed September 1, 2016 (**Doc. 26**)

Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motions are not well-taken and, therefore, are denied.

**BACKGROUND**

In Motion to Suppress #1, Defendant moves to suppress evidence discovered or located in Defendant's residence as a result of the execution of a search warrant at his residence on February 19, 2016. In Motion to Suppress #2, Defendant moves to suppress intercepted communications as a result of the execution of a February 16, 2016 wiretap authorization.

---

[1] Parties were given an opportunity to supplement their written argument after the Government filed the original warrant and affidavit as an exhibit. *See* Doc. 41.

1

Defendant is charged with possession with intent to distribute cocaine base, felon in possession and possession of a firearm in furtherance of a drug trafficking violation.

Defendant is charged with drug-related crimes,[2] but the searches in question began with an investigation into the murder of David Dickerson, whose body was found in an underground cistern tank at a residence in Santa Fe in September 2015. Testimony at the suppression hearing indicates that law enforcement believed the murder of David Dickerson occurred in July of 2015. Through Dickerson's ex-girlfriend and a confidential informant ("CI#1"), police learned that Dickerson had broken into Defendant's home about a year earlier. The girlfriend, Regina Baros, described Dickerson as "a heavy cocaine user" and "paranoid" and that she last saw him on July 29, 2015 at Buffalo Thunder Resort and Casino. CI#1 informed police that he/she ("he" for purposes of this Order) believed the home invasion was recorded by Defendant's surveillance cameras, stored in a hard drive and that Defendant kept the surveillance footage. Dickerson's father, John Dickerson ("John") told police in December 2015 that he had done some work at Defendant's residence in July of 2014 and at that time Defendant played surveillance footage showing the home invasion by Dickerson. Police also spoke with Victor Serrano who had worked construction for Defendant who had told him that "if I ever get my hands on that fucker [David Dickerson], he's going to die." Serrano also told police that during the time he had served 47 days in the Santa Fe County detention facility (August to October 2014), another inmate had told him to warn David Dickerson because "Brandon [defendant] is pretty pissed at him, and shit's going down." Ex. 1 at 6-7.

---

[2] Count 1 is a charge of possession with intent to distribute 28 grams and more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); Count 2 is a charge of maintaining a drug-involved premises in violation of 21 U.S.C. § 856(a); Count 3 is a charge of felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and Count 4 is a charge of possessing a firearm in furtherance of a drug trafficking crime in violation of 19 U.S.C. § 924(c). Doc.12.

On February 16, 2015, federal agents applied for and obtained, a warrant to search Defendant's residence to obtain "[v]ideo surveillance equipment, to include monitors, video data storage units, compact disks, external hard drives, removable USB hard drives or Thumb drives, or any device in which video files could be stored.  The affiant for the warrant application was Detective Anthony Trujillo, a detective with the Violent Crimes Unit, who was a police officer with over thirty years of experience and a detective since 1998.  That same day, Detective Trujillo also submitted an affidavit in support of an application for an Order authorizing a wiretap.  Ex. 1 (Doc. 26-1) to motion.  Law enforcement executed the First Warrant inside Defendant's residence, including the kitchen, laundry room, back bedroom and living room, and found, inter alia, marijuana, a bag with suspected cocaine, rock cocaine, cell phones, a Derringer pistol, a Berretta pistol, a blue semi-automatic pistol and a bag with a large amount of prescription pills.  When officers came upon the drugs and firearms in executing the warrant, they sealed the search scene and sought  an amended warrant in order to search Defendant's residence for illegal narcotics or controlled substances, paraphernalia, currency, firearms and phones.  The amended Affidavit was presented to a First Judicial District Court judge, Judge Mary Marlowe Sommer, on February 19, 2016 and the Amended Search Warrant was issued.

Defendant argues that the First Affidavit was deficient in that it did not demonstrate the existence of probable cause for evidence of a crime in February 2016 which allegedly occurred in July 2014 (namely, David Dickerson's home invasion/robbery).  Defendant contends that his knowledge that Dickerson had invaded his home in July of 2014 is not a sufficient motive to supply probable cause to believe that he killed Dickerson.  Defendant contends that even if the first Affidavit provided probable cause that Defendant killed Dickerson, the information on which the warrant was based was stale.  Finally, Defendant argues that the first search was

3

outside the scope of the warrant because it was supposed to be directed to locating the footage stored on surveillance equipment that was found in the living room.[3]

Defendant seeks to suppress all communications illegally intercepted, monitored and recorded from phones used by Defendant on the basis that there was no probable cause to support the affidavits; that the warrant was stale, and that the order exceeded the scope of the warrant because it included communications not related to the alleged murder and evidence tampering. Finally, Defendant suggests that a hearing under *Franks v. Delaware* is required. Under *Franks,* a defendant can challenge a facially sufficient affidavit supporting a search warrant on the basis that the police knowingly, intentionally, or recklessly included false information.   438 U.S. at 155–56 (1978).

## DISCUSSION

Probable cause to search means "that there is a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Reyes*, 798 F.2d 380, 382 (10th Cir. 1986); *United States v. Mesa-Rincon*, 911 F.2d 1433, 1439 (10th Cir. 1990) (internal quotation marks omitted) (probable cause is a common-sense standard that requires facts sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed). A totality of the circumstances analysis is used to determine probable cause. *U.S. v. Shomo,* 786 F.2d 981, 983 (10th Cir. 1986); *Illinois v. Gates,* 462 U.S. 213, 235 (1983) ("only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause"). The test for probable cause to support a warrant is whether the facts presented in the affidavit would 'warrant a man of reasonable caution' to believe that evidence of a crime will be found at the place to be searched." *U.S. v. Nolan,* 199 F.3d 1180, 1183 (10th Cir. 1999).

---

[3] It is undisputed that the Amended Affidavit and Second Search Warrant contained the same language as the first affidavit and warrant, with the addition of language stating that there was probable cause to believe that there were drugs at the residence.

Probable cause "requires a nexus between the place to be searched and the items to be seized." *Id.* The affiant must also show a nexus between the place to be searched and the suspected criminal activity. *United States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009). "[T]he affidavit supporting the search warrant need not contain direct evidence or personal knowledge that the items sought are located at the place to be searched." *Nolan*, 119 F.3d at 1183.

    A.    <u>Motion to Suppress # 1: Search of Residence (Doc. 30)</u>

Defendant argues that the First Affidavit ("Affidavit" hereinafter) presented no evidence to support a belief that Defendant had in fact killed Mr. Dickerson and that the fact that Defendant had a possible motive to kill Mr. Dickerson because the latter had invaded Defendant's home does not constitute probable cause for the warrant.

    *1.*    *Probable Cause*

The Government contends that the warrant sufficiently describes the nexus between the suspected crimes and the requested search and seizure authority. In the affidavit, Detective Trujillo, who testified at the hearing, described the information that had been collected from various individuals providing the connection between the video footage and the murder: Defendant had been physically assaulted by Dickerson during the home invasion using a pair of brass knuckles; $3,000 in currency and an unknown amount of cocaine had been taken from Defendant's residence during the home invasion; and the death threats that were made by Defendant and overheard by a confidential informant. The affidavit notes that Defendant had recorded the home invasion robbery that was the suspected motive for Dickerson's murder and that Defendant had shown a visitor to his Santa Fe home that recording. It sets out the basis to believe that such a recording could be preserved digitally, based on information provided by CS#1, whose reliability was attested to as well. (2 pages before end in first affidavit). The

affidavit goes on to describe information collected from other individuals who knew of death threats made by Defendant against David Dickerson, and which would reasonably lead to the conclusion that Defendant intended to retaliate very seriously against Dickerson for the home invasion. (4th-6th page of first affidavit). It also explains why such digital storage media would need to be searched for and seized as part of the effort to recover any such recordings, since it is "evidence of a motive" in Dickerson's murder (last page of affidavit).

Defendant questions whether the video footage had been transferred, and thus the basis for probable cause to search for it in other storage forms such as secure digital ("SD") cards or thumb drives. The Court rejects Defendant's argument that the Affidavit was deficient because it did not include evidence that Defendant was known to digitally store his surveillance tapes. Probable cause "is a matter of probabilities and common sense conclusions, not certainties." *U.S. v. Biglow,* 562 F.3d 1272, 1280 (10th Cir. 2009). Here, the Affidavit provides sufficient support for the existence of the footage, since at least two individuals had seen it and given that the footage of the home invasion was motive for Dickerson's murder (based on statements made by individuals interviewed by Detective Trujillo), and also for the probability that Defendant had transferred the video footage to another device and had stored it in another form of electronic media that was easier to hide.

    2.    *Staleness*

Defendant's second argument is that any basis for probable cause to search for the video was stale by 19 months, since Defendant's home invasion video was taken in July of 2014, the decedent was killed in July of 2015, and his body was not found until September of 2015. Probable cause "cannot be based on stale information that no longer suggests that the item sought will be found in the place to be searched." *Shomo,* 786 F.2d at 983. "The basis of the

staleness doctrine is the notion that probable cause dissipates with the passage of time*." United States v. Miles*, 772 F.2d 613, 616 (10th Cir. 1985) (citing *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972); *U.S. v. Miles,* 772 F.2d 613, 616 (10th Cir. 1985) (basis of staleness doctrine "is the notion that probable cause dissipates with the passage of time").

The relevant question here is "whether probable cause existed at the time the warrant issued to believe that the items were still located at the home." *U.S. v. Brinklow*, 560 F.2d 1003, 1005 (10th Cir. 1977) (citing *United States v. Rahn*, 511 F.2d 290 (10th Cir. 1975) ("time is a crucial element of probable cause").  However, as the Government notes, the passing of time "becomes less significant" when evidence of continuous conduct is presented.  *Miles,* 772 F.2d at 616. Staleness factors include (1) the nature of the criminal activity, (2) the length of the activity, and (3) the nature of the property to be seized.  *United States v. Williams*, 987 F.2d 1034, 1039 (10th Cir. 1990).

According to the Affidavit , the videotape was seen by Dickerson's father in July of 2014, shortly after the home invasion occurred.  However, the affidavit for the First Warrant did not have to provide a *certainty* that the objects sought would still be found in the search.  The inquiry is whether the facts and circumstances taken as a whole led to probable cause that the desired items would be found in the search.  *See U.S. v. Brinklow,* 560 F.2d 1003, 1006 (10th Cir. 1977) (denying motion to suppress where 11-month interval between time accomplice observed radio equipment, police scanner and trip log in defendant's motor home and execution of search warrant did not render the accomplice's information stale).  In *United States v. Rahn*, 511 F.2d 290 (10th Cir. 1975), an alcohol, tobacco and firearms special investigator was convicted of conversion of government property.  The court held that a government inspector's recollection of a statement made *two years* previously provided probable cause to believe that

defendant still possessed the weapons based on statement the defendant made to affiant that he believed the weapons would appreciate in value and also because affiant had observed defendant using a shotgun identical to the one that had been stored in a government vault. In this case, the chances were good that the surveillance tapes were still available to be found in Defendant's home because of the nature of that evidence and because it was likely that Defendant would continue to conceal it from law enforcement.

The Government contends that the staleness factors come out in its favor, and the Court agrees. For the first factor, the nature of criminal activity was very serious (premeditated murder, as well as efforts to tamper with any evidence of that murder to conceal it from law enforcement). For the second factor (the length of the activity), the Government argues that the concealment of evidence would be ongoing because there is no statute of limitations for murder and—with regard to the drugs and firearms observed during the first search and which provided a basis for the second warrant—because Defendant's drug dealing is a continuing activity relevant to the murder motive. As to the third factor, the nature of property to be seized, the items being sought were storage media which can last indefinitely, they are not subject to decay as a chemical would be, over the passage of time. Media that is electronically stored is easy to store and hide, which is likely to render these items more likely to be kept.

Further, Defendant's contention that the First Warrant was stale by 19 months is an overstatement. The home invasion occurred in 2014, but Dickerson was not killed until July of the year after in July of 2015 and his body was discovered two months later, in September of 2015. Thus, the relevant crime that was committed, i.e. the murder of David Dickerson, occurred only seven months from the time the warrant was issued, and law enforcement first became aware of the crime only *six* months before the warrant was applied for and obtained.

Under these facts, Defendant's staleness argument fails, and the motion to suppress is denied on that ground.

        *3.*     *Scope of Warrant*

Defendant contends that the First Affidavit and First Warrant did not particularly tailor the places to be searched for the surveillance video evidence sought and that it was overbroad because it contained no limitation on the scope of the search. The searches of the kitchen, laundry room, bathroom, bedroom and living room went beyond the scope of the First Affidavit, which was supposed to be for "the video footage of the home invasion committed by David Dickerson, Jeremy Munoz and Diego Gomez, and captured by the surveillance equipment installed at the residence of Brandon Maestas."

The particularity requirement of the Fourth Amendment "prevents general searches and strictly limits the discretion of the officer executing the warrant." *Cassady v. Goering*, 567 F.3d 628, 635 (10th Cir. 2009). "It is not enough that the warrant makes reference to a particular offense; the warrant must ensure that the search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Id*. at 636 (brackets omitted). A warrant is overly broad "if it does not contain sufficiently particularized language that creates a nexus between the suspected crime and the items to be seized." *Mink v. Knox*, 613 F.3d 995, 1010 (10th Cir. 2010); *United States v. Harris*, 903 F.2d 770, 775 (10th Cir. 1990) (a warrant is overbroad where it "fail[s] to specify a crime to which the sought evidence relates"). Probable cause requires a nexus between the contraband to be seized or suspected criminal activity and the place to be searched. *U.S. v. Rowland,* 145 F.3d 1994, 1203 (10th Cir. 1998). Also, the "difference between a valid warrant and an overbroad warrant lies in whether the government could have phrased the warrant more specifically." *Cassady v. Goering*, 567

9

F.3d 628, 636 (10th Cir. 2009). The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing magistrate." *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 1018 (1987).

In searching for the video footage, the Affidavit requested a warrant to search Defendant's entire premises, including "furniture, walls, crawl-spaces and/or attics." (last page of 1st affidavit). At the hearing, Detective Trujillo testified that the search of Defendant's residence included areas where a thumb drive or an SD could be found. Since a thumb drive measures about an inch and a half, and a SD measures about a half-inch, it would not have been outside the scope of the warrant to search other rooms of Defendant's residence besides the living room. The First Warrant specifically authorized the search to include thumb drives "or any device in which video files could be stored." Ex. 1 (Am. Aff.) at 1, 7. At the hearing, Detective Trujillo testified that law enforcement searched closets, chests of drawers and desk drawers. While hard drives would most likely found in the living room, smaller electronic storage devices could be hidden almost anywhere. Detective Trujillo testified that during the search, officers found large amounts of marijuana stored in jars in the laundry room and jars of crack cocaine on top of the nightstand in the bedroom. These jars were in plain view on entering the rooms. In addition, the search team saw a weapon in the drum of the dryer in the laundry room, again in plain view. At that point, the officers backed off the scene, sealed it and applied for an amended warrant for the seizure of these items.

The Court finds that the First Warrant was properly executed, and was not outside the scope of the authorized search. The kitchen, laundry room, including any appliances or furniture in those rooms, are all places where a criminal might hide a media-storing device, and were all permissible places to search based on the language of the warrant. Also, drugs and contraband

found were within the scope of the search because the officers saw them in plain view during the initial search.

### 4.     *Good Faith Exception*

Defendant contends that in applying for both the initial and Amended Affidavit, Detective Trujillo knew that he lacked probable cause and there was no probability that the July 2014 video still existed in Defendant's home in February of 2016.

If a court determines that a warrant lacks probable cause, the Government bears the burden of showing that the "good-faith" exception applies. In *United States v. Leon*, the Supreme Court established a "good faith" exception to the exclusionary rule and held that evidence obtained in reliance on a search warrant subsequently invalidated for lack of probable cause should not be excluded because the officers relied on the search warrant in objective good faith. 468 U.S. 897, 922 (1984). However, the exception does not apply when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" and "the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid." *U.S. v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000). Also, suppression of the evidence is appropriate if the magistrate judge issuing the warrant (or, in this case, the district court judge), was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth, or if the issuing judge wholly abandoned her detached and neutral judicial role. *Leon,* 468 U.S. at 899; *U.S. v. Campbell*, 603 F.3d 1218, 1226 (10th Cir. 2010).

There is no need to determine whether this exception applies here since the Court has found that probable cause existed for the First Affidavit and First Warrant. In any event, there is

virtually no indication either that Detective Trujillo exhibited a reckless disregard of the truth in applying for the warrant or that Judge Sommer was anything less than detached and neutral in issuing the warrant. Detective Trujillo testified that Judge Sommer had some concern over the legal sufficiency of the affidavit related to an assertion that other investigative leads had been exhausted. Defendant insinuates that this concern affected Judge Sommer's neutrality. The Court rejects this interpretation, and instead finds Judge Sommer's concern underscores her neutrality in that she was not inclined to rubber-stamp applications for warrants.

Therefore, even if there was no probable cause for the warrant, this exception would apply.

      B.      <u>Motion to Suppress #2: Wiretap Trace (Doc. 26)</u>

On February 16, 2016, government agents submitted an affidavit in support of an application for an Order authorizing a wiretap. Ex. 1 (Doc. 26-1). Law enforcement planned on executing the wiretap before the house was searched, hoping that the search of the house would generate activity that could be heard on the wiretap. Defendant's communications were intercepted and monitored from February 19-22, 2016, which would span the time during which law enforcement found drugs and contraband in the residence.

Defendant seeks to suppress all communications illegally intercepted, monitored and recorded from phones used by Defendant because there was no probable cause to support the affidavits. Defendant also contends that the warrant for the wiretap was stale, and that the order exceeded the scope of the warrant because it included communications not related to the alleged murder and evidence tampering.

           1.      *Probable Cause*

Defendant argues that the warrant for a wiretap was not based on probable cause because the wiretap affidavit contained no facts or finding that probable cause existed for intercepting calls about any criminal activity other than murder and tampering with evidence.

The Government contends that there was sufficient probable cause for the wiretap order. In the application for the wiretap, Detective Trujillo states that Defendant had a motive to kill Dickerson with information that Defendant was physically assaulted by Dickerson during the home invasion, that Dickerson took cocaine and $3,000 in cash during the robbery, and that Defendant had threatened Dickerson's life as a result of his role in the robbery. *Id.* The affidavit also stated that the video surveillance of the home invasion was still believed to be stored at Defendant's home. *Id.* at 16. The Wiretap Affidavit goes on to explain that individuals involved in criminal activity communicate with others, using phones, about that criminal activity. Doc. 26-1 at 9. They do this to avoid in-person, public contact, and that murder plots (such as in this case) often include several individuals with varying levels of involvement. *Id.* Detective Trujillo states in the Affidavit that he expected Defendant to use telephone conversations to create alibis or prepare others he spoke with to help him avoid apprehension by law enforcement. Doc. 26-1 at 13-14. He had been informed that Defendant had discussed ways of murdering Dickerson, such as poisoning and giving him "bad drugs" and ways of disposing of Dickerson's body. *Id.* at 19-20. The Government argues, and the Court agrees, that these assertions constitute sufficient nexus between the crimes suspected, murder and tampering with evidence to conceal murder, and the thing to be searched or seized, phone conversations and records of phone communications between Defendant and some other suspects or associates. These statements are more than sufficient to demonstrate probable cause that a crime had been committed.

Defendant claims the Wiretap Affidavit is deficient because it states that the wiretap interception was preferable to confronting Mr. Maestas directly because such confrontation would not result in any admissions from him, but would result in him "invoking . . . his right to be represented by an attorney and to remain silent." Doc. 26-1 at 22. The Affidavit also states that after he invoked his right to be silent, he "would have to be released. . . ." *Id.* Defendant argues that it is inconsistent to claim there is probable cause for a warrant when the affidavit admits there would be no probable cause to detain Mr. Maestas. The flaw in this argument is that Defendant conflates the probable cause standard to allow a *search* with probable cause to *arrest* an individual.

        2.     *Staleness*

The Wiretap Order was authorized on February 16, 2016 concerning a murder that happened on July 31, 2015 (though the body was not found until September 30, 2015), possibly in retaliation for a home invasion robbery that occurred in July of 2014. Defendant offers no specific argument as to why staleness should apply to the calls that were monitored, but generically argues that based on the time frame for the home invasion and the murder, the information on which the order was based is stale and therefore cannot support probable cause.

Staleness is not an issue here for evidence sought to be collected through a wiretap. The purpose of the wiretap warrant is not to find physical evidence that may or may not still be discoverable, but rather target phone calls that are fresh evidence for a crime that has no statute of limitations. The motion is denied on this basis.

        3.     *Scope of Warrant for Wiretap*

The Wiretap Order authorized interception and monitoring for communications related to the crimes of murder and tampering with evidence. Doc. 26-1 at 3. Defendant contends that the wiretap went impermissibly beyond the scope of the Order by including calls related to drugs.

This argument is not convincing. As the Government argues, non-pertinent phone calls were "minimized." Detective Trujillo described the "minimization" process at the hearing. Recording of conversations that were not relevant to the case were stopped for one minute. The recording was resumed if the conversation was pertinent, or stopped again if it was not pertinent. Communications related to drugs are indeed relevant because the motive for the home invasion was drug-related, and thus retaliation by Defendant was the motive for the murder. Drug-related conversation was also related to the firearms and currency that was found in Defendant's residence.

Conversations about Defendant's hiding of cash are also relevant to the drugs that were found in the house. As mentioned previously, the wiretap was intended to catch communications that occurred following the search of Defendant's residence. Hiding large sums of money from police is relevant to Defendant's past as a drug dealer and thus is related to the purpose and scope of the warrant: the warrant authorized communications related to the crime of murder; the motive for murder was related to drugs, and the hiding of cash was pertinent to drug-dealing. The hiding of cash in 2016 was relevant to the 2014 home invasion because it is connected to the drug business Defendant had to protect and which was compromised during the 2014 home invasion. Defendant's surveillance of the home invasion also ties into the drug-dealing, since it would make sense that Defendant's intention in using surveillance would be to protect his drug-dealing business and would use the information to ensure that it was not threated by invaders.

    4.    *Good Faith Exception*

The good-faith exception is not necessarily here for the same reason that was given for Defendant's Motion to Suppress #1. As the Court concluded regarding that first motion, there is also no indication either that Detective Trujillo exhibited a reckless disregard of the truth in applying for the warrant or that Judge Sommer was anything less than detached and neutral in issuing the Wiretap Order. Therefore, even if there was no probable cause for the warrant, this exception would apply.

      C.     *Franks* Hearing Is Not Appropriate

Defendant suggests that a hearing under *Franks v. Delaware* is in order. Under *Franks,* a defendant can challenge a facially sufficient affidavit supporting a search warrant on the basis that the police knowingly, intentionally, or recklessly included false information. 438 U.S. at 155–56 (1978). Because there is no evidence or suggestion of evidence that Trujillo included false information or tried to mislead Judge Sommer in signing the Wiretap Order, Defendant's request for a *Franks* hearing is denied.

## CONCLUSION

In sum, the Court finds and concludes that probable cause existed for both the search warrants of Defendant's residence and the Wiretap Order and that it was not stale at the time these were issued. The Court also finds and concludes that the searches and wiretap surveillance and interception were executed properly and did not go beyond the scope of the warrant and the Order.

The Court further finds and concludes that it is not necessary to consider whether the good-faith exception applies, since probable cause existed for the warrants and the wiretap. However, if probable cause did not exist, this exception would apply for reasons described in the Court's findings above.

Finally, Defendant's request for a hearing under *Franks v. Delaware* is inappropriate. Defendant has not met the threshold requirements for such a hearing.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress Number 1 **(Doc. 30)** is hereby DENIED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress Number 2 **(Doc. 26)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE